UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD HINES,

     Plaintiff,

v.                                   Case No. 8:20-cv-605-CPT

KILOLO KJAKAZ,
Acting Commissioner of Social Security,[1]

     Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Supplemental Security Income (SSI).   For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1970, has a high school education, and has no past relevant work experience.  (R. 22, 33–34).  In February 2017, the Plaintiff applied for SSI, alleging disability as of February 1, 2017, due to hypertension, cardiomyopathy, cardiac catheterization, parotid gland tumor, and acute congestive heart failure.  (R.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

164–72, 188).   The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration.  (R. 63, 77).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in January 2019.  (R. 30–53).  The Plaintiff was accompanied by a non-attorney representative at that hearing and testified on his own behalf.  (R. 32–45).  A vocational expert (VE) also testified.  (R. 45–51).

In a decision issued in April 2019, the ALJ found that the Plaintiff: (1) had not engaged in any substantial gainful activity since February 24, 2017; (2) had the severe impairments of hypertension, cardiomyopathy, and congestive heart failure; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform a restricted range of sedentary work; and (5) based on the VE's testimony, could not engage in his past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy.  (R. 17–23).  In light of these findings, the ALJ concluded the Plaintiff was not disabled.  (R. 23).

The Appeals Council denied the Plaintiff's subsequent request for review.  (R. 1–3).  Accordingly, the ALJ's decision became the final decision of the Commissioner.

## II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of

2

not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that he

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "[W]hile the court [accords] deference to the [Commissioner's] factual findings, no such deference is given to [his] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

III.

The Plaintiff raises four challenges on appeal: (1) the ALJ improperly discounted the Plaintiff's subjective complaints; (2) the ALJ did not appropriately weigh the opinions of the Plaintiff's treating cardiologist; (3) the ALJ's hypothetical question to the VE did not include all of the Plaintiff's limitations; and (4) the ALJ failed to develop the record regarding whether the Plaintiff met the applicable listing.[4] (Doc. 26 at 12–19, 24–26, 28–31, 33–36). Each of these challenges will be addressed in turn.

A.

The evaluation of a claimant's subjective complaints is governed by the "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets the pain standard, the ALJ must then assess the intensity and persistence of the claimant's symptoms to determine how they restrict his capacity to work. 20 C.F.R. § 416.929(c)(3). The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and

---

[4] The Court has reordered the Plaintiff's arguments for purposes of its analysis.

intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for relief of his pain or other symptoms; (6) any measures the claimant uses or has used to relieve his pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms.  *Id.*

After evaluating "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).  The ALJ, however, "need not cite particular phrases or formulations" in performing this assessment, so long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, ___ F. App'x ___, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (explaining that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's pain testimony, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam)).  A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is buttressed by substantial evidence. *Foote*, 67 F.3d at 1562 (citation omitted).

Here, the Plaintiff testified at the hearing that he experienced a variety of symptoms as a result of his cardiac impairments and the medications he took for those issues, including dizziness, blurred vision, fatigue, and frequent bouts of diarrhea. (R. 38). In fact, the Plaintiff stated that after he takes one particular medication in the morning, "basically every 20 minutes I'm going to the bathroom [to urinate]." (R. 42). The Plaintiff also complained to the ALJ about heart problems and chest palpitations. (R. 19).

The ALJ referenced these complaints in his decision, as well as the Eleventh Circuit's pain standard and his duty to account for "all symptoms and the extent to which th[o]se symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the [applicable legal requirements]." (R. 19) (citing of 20 C.F.R. § 416.929; Social Security Ruling (SSR) 16-3p). The ALJ also rendered an express credibility determination regarding the Plaintiff's reported symptoms, finding:

> the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 19–20).

In support of this assessment, the ALJ summarized medical records showing that, although the Plaintiff was diagnosed in February 2017 with—among other conditions—severe left ventricular dysfunction with an ejection fraction of under 30%,

7

he was prescribed a wearable defibrillator and was shortly thereafter described by his treating cardiologist, Dr. Lingappa Amarchand, as having a regular heart rate and rhythm with no murmurs, normal motor strength, and no edema.  R. 20.  The ALJ also noted that, while the Plaintiff suffered from hypertension, treatment notes indicated this condition was controlled with medication, his chest pain was stable, and his shortness of breath and palpitations were improved with treatment.  *Id.*  The ALJ additionally recounted "similar physical examinations [by Dr. Amarchand] for the remainder of the period at issue," stating:

> Dr. Amarchand reported the [Plaintiff] had regular heart rate and rhythm with no murmur, rubs, or gallops, 5/5 muscle strength against resistance, no edema, normal peripheral pulses, and he moved all of his extremities well.  Dr. Amarchand also consistently noted that the [Plaintiff's] shortness of breath and congestive heart failure were improving, hypertension was controlled, and dilated cardiomyopathy was stable.  In late 2017, the [Plaintiff] reported his palpitations were controlled, chest pain was stable, and shortness of breath was mild.  As the [Plaintiff's] treatment progressed, he stated that his palpitations were off and on, occasional, improved, and/or less frequent, his chest pain was stable, and he either denied shortness of breath or described it as mild.

*Id.* (citing exhibits 4F, 8F, and 9F).

The Plaintiff concedes that Dr. Amarchand's records reflect that his "condition was stable[,] and [that] his symptoms had improved" since he was prescribed the wearable defibrillator.  (Doc. 26 at 16).  The Plaintiff also admits that Dr. Amarchand's treatment notes conflict with the Plaintiff's own allegations during the claims process. *Id.*  The Plaintiff nonetheless asserts, however, that the ALJ erred in relying on the inconsistencies between Dr. Amarchand's documentation and the Plaintiff's

subjective complaints—particularly those relating the side effects from his medications—in discounting the Plaintiff's testimony. *Id.* This contention fails.

At the hearing, the ALJ questioned the Plaintiff regarding the symptoms caused by his medications (R. 38, 42) and reviewed that testimony in his decision in connection with his credibility finding. *See* (R. 19) (describing the Plaintiff's allegations that "he was unable to work because he was chronically fatigued and had shortness of breath, dizziness, blurred vision, and diarrhea secondary to his heart problems and medication"). The ALJ also stated, as noted, that he considered the medical evidence and other evidence of record in accordance with the applicable law and found that it did not wholly conform to the Plaintiff's subjective complaints for the reasons set forth in his decision. *Id.* at 19–20 (citing 20 C.F.R. § 416.929 and SSR 16-3p). These findings are adequate to show that the ALJ properly considered the Plaintiff's subjective complaints, including those stemming from his medication side effects. *See Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (holding that the ALJ satisfied her duty to consider alleged medication side effects, even though she did not specifically mention those side effects in her decision, in part, by stating that she considered all the claimant's symptoms based on the requirements of the applicable regulation and SSR).

Notably, the Plaintiff does not cite to any record evidence demonstrating that he complained of his medication side effects to Dr. Amarchand. *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366–367 (11th Cir. 2010) (per curiam) (holding that an ALJ did not have a duty to elicit further testimony regarding a claimant's medication

side effects, in part, because she did not report those side effects to her treating physicians).  To the contrary, the Plaintiff routinely denied symptoms like fatigue, light headedness, and dizziness, *see e.g.,* (R. 341, 344, 373, 376, 379, 382, 385, 389), and Dr. Amarchand did not identify any side effect symptoms when asked to describe same in an RFC questionnaire he completed in October 2017 (R. 367).  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) ("[A] claimant's failure to report side effects to his physicians is an appropriate factor for the ALJ to consider in evaluating whether a claimant's alleged symptoms are consistent with the record.").

Although the Plaintiff now argues that his medications cause "the exact side effects that [he] complained of," including frequent urination and fatigue (Doc. 26 at 18), the Plaintiff does not reference any parts of the record to buttress those statements. Regardless, even accepting the Plaintiff's representations as true, he fails to point to any evidence relating to medication side effects that contradicts the ALJ's finding as to his credibility.  *See Werner*, 421 F. App'x at 938 ("Mere lists of potential side effects do not establish that a claimant in fact experienced such side effects."); *Walker*, 404 F. App'x at 367 (holding that the claimant's submission to the Appeals Council of pharmacological information revealed "only that the symptoms [the claimant] testified she experienced were known sometimes to be caused by the medications she was taking [but] did not contradict the ALJ's finding that [the claimant's] testimony as to the severity of her symptoms (including her side effects) was not entirely credible").

The Plaintiff also avers that the ALJ erred by failing to discount his subjective complaints on the grounds that Dr. Amarchand's treatment notes did not reference

10

any work-related restrictions. (Doc. 26 at 16–17). In support of this argument, the Plaintiff cites *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727 (11th Cir. 2017) (per curiam). In that case, the Eleventh Circuit observed:

> [t]he primary function of medical records is to promote communication and recordkeeping for health care personnel. It is not to provide evidence for disability determinations. The mere fact that a doctor's judgments about a claimant's work-related limitations are not expressly reflected in treatment notes does not necessarily mean that the judgments are inconsistent with the treatment notes.

*Sampson*, 694 F. App'x at 735–36 (citations and quotations omitted).

Based on this reasoning, the court in *Sampson* found that the ALJ improperly assigned little weight to a treating physician's opinion regarding the claimant's ability to stand and walk during a workday solely because the doctor did not advise the claimant to curb those activities in his treatment notes. 694 F. App'x at 735. The court additionally pointed to the fact that the ALJ did not otherwise explain, nor could the court discern, why the treating physician's findings did not support the physician's opinion. *Id.* at 736.

*Sampson* does not help the Plaintiff here. Unlike in *Sampson*, the ALJ did not infer that the Plaintiff's reported symptoms were not credible because Dr. Amarchand's notes did not include an opinion regarding the Plaintiff's ability to work. Instead, the ALJ determined that Dr. Amarchand's records, which reflected that the Plaintiff's condition was stable, were inconsistent with the severity of the Plaintiff's subjective complaints. (R. 20).

In addition to the above arguments, the Plaintiff contends that because Dr. Amarchand's "treatment notes are almost exactly the same [for] each visit," the discrepancies between those records and the Plaintiff's complaints "could have been due to the fact that Dr. Amarchand was not documenting from visit to visit [the Plaintiff's] subjective reports." (Doc. 26 at 16).  The problem with this argument is that it relies on speculation and lacks any factual support in the record, particularly since Dr. Amarchand's records consistently reflect updated notations at each appointment.  In October 2017, for example, Dr. Amarchand described the Plaintiff's palpitations as "off and on" and his shortness of breath as both improving and—in the Plaintiff's words—"mild." (R. 378–79).  Similarly, at the next appointment in January 2018, Dr. Amarchand characterized the Plaintiff's palpitations as "less frequent," and stated that the Plaintiff denied shortness of breath.  (R. 375–76).

The Plaintiff's final argument relative to the ALJ's evaluation of his subjective complaints is that the ALJ failed to consider whether the limited nature of the Plaintiff's daily activities—such as resting, elevating his legs, and light housework— impacted the severity of the symptoms he reported to Dr. Amarchand.  Doc. 26 at 17– 18.  The contention rests on the assumption that an increase in the Plaintiff's activities would have exacerbated his symptoms.  Without more, however, such conjecture cannot serve as a basis for reversal.  *See Manzo v. Comm'r of Soc. Sec.*, 408 F. App'x 265, 269 (11th Cir. 2011) (per curiam) (declining the claimant's invitation to guess— without a basis in the record—as to why her impairment imposed greater limitations than the ALJ assessed); *see also Thomas v. Berryhill*, 2018 WL 4558193, at *3 (N.D. Fla.

12

Sept. 21, 2018) ("[A claimant] cannot establish reversible error through his speculation, or unsupported conclusions, regarding limitations that might be caused by his impairments.").[5]

In sum, notwithstanding the Plaintiff's arguments to the contrary, the ALJ sufficiently addressed his subjective complaints and provided "specific and adequate reasons" supported by substantial evidence for rejecting the Plaintiff's testimony. *Stowe*, 2021 WL 2912477, at *4. Remand on this basis is therefore not warranted. *See Werner*, 421 F. App'x at 939 ("The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

B.

The Plaintiff second challenge is that the ALJ improperly rejected Dr. Amarchand's medical opinions based on a conflict between those opinions and Dr. Amarchand's own records. This challenge likewise fails.

It is well established that, in rendering a disability determination, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or other acceptable medical sources "'that reflect judgments about the

---

[5] The Plaintiff's theory is also contradicted by Dr. Amarchand's August 2018 note that he "discussed [with the Plaintiff] the benefits of at least a few hours each week of moderate aerobic exercise." (R. 388–90).

nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2), 416.927(a)(2)).   An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. §§ 404.1527(a)(c)(1)–(2); *id.* at § 416.927(c)(1)-(2)).   Treating physicians' opinions are accorded the most deference because there is a greater likelihood that these healthcare providers will "be able to give a more complete picture of the [claimant's] health history." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. § 404.1527(c)(2)).   As a result, the ALJ must give the opinion of a treating physician substantial or considerable weight unless the ALJ clearly articulates reasons—buttressed by substantial evidence—that establish "good cause" for discounting that opinion. *Hargress*, 883 F.3d at 1305–06; *Phillips*, 357 F.3d at 1241.   "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own

14

medical records." *Schink*, 935 F.3d at 1259 (citations omitted).  In the end, irrespective of the nature of a physician's relationship with a claimant, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion."  *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

In this case, Dr. Amarchand submitted a medical source statement in July 2017 and—as alluded to previously—an RFC questionnaire in October 2017.  (R. 352–55, 365–70).  The ALJ assigned "little weight" to both, describing them as "completely inconsistent with Dr. [Amarchand's] treatment records."  (R. 21).  In support of this assessment, the ALJ stated:

> Dr. [Amarchand] treated the [Plaintiff] throughout the period at issue and consistently documented normal physical examinations with regular heart rate and rhythm with no murmur, rubs, or gallops, 5/5 muscle strength against resistance, no edema, normal peripheral pulses, and he moved all of his extremities well.  In addition, Dr. [Amarchand] regularly reported that the [Plaintiff's] shortness of breath and congestive heart failure were improving, hypertension was controlled, and dilated cardiomyopathy was stable.

*Id.* (citations omitted).

The Plaintiff admits the ALJ correctly identified a disconnect between Dr. Amarchand's opinions and the doctor's own records.  The Plaintiff nonetheless surmises again that it is "very likely" the reason Dr. Amarchand's notes do not reflect the severity of the Plaintiff's symptoms is because the Plaintiff "spent all of his time resting and avoiding any physical activity that would bring on symptoms. . ."  Doc. 26

at 28–29.  For the reasons set forth above, such unsupported speculation does not provide grounds for remand.  *See Manzo*, 408 F. App'x at 269; *Thomas*, 2018 WL 4558193, at *3.

The Court is also not persuaded by the Plaintiff's contention that Dr. Amarchand's treatment notes do not "conclusively counter" his opinions.  (Doc. 26 at 30).  As an initial matter, this argument appears inconsistent with the Plaintiff's own acknowledgement that Dr. Amarchand's treatment notes and opinions are contradictory.  *Id.* at 28–29.  Even were that not the case, the Plaintiff fails to identify any evidence in the record that demonstrates the ALJ's finding of a conflict between Dr. Amarchand's notes and his opinions is insufficiently supported.  *Lawton*, 431 F. App'x at 833 (noting that, even if "the record . . . contain[s] some evidence that is contrary to the ALJ's determination, [the court] is not permitted to weigh the importance attributed to the medical evidence").

The Plaintiff's final argument relative to the ALJ's evaluation of Dr. Amarchand's assessments is that "the ALJ should have given great weight to [those] opinions in light of the severity of [the Plaintiff's] heart disease." (Doc. 26 at 29).  The Plaintiff, however, does not cite any legal authority that such an argument serves as a basis for remand here.  In any event, the ALJ explicitly recognized the seriousness of the Plaintiff's heart condition, stating that testing "revealed that the [Plaintiff] has congestive heart failure and cardiomyopathy with a low ejection fraction" and that the Plaintiff has used a wearable defibrillator.  (R. 21–22).  As a result, this argument is unavailing as well.

16

C.

The Plaintiff's third challenge is that the ALJ's RFC determination did not include all his limitations and that the ALJ improperly relied on the VE's answer to a hypothetical question based on that inaccurate RFC determination.  (Doc. 26 at 33–35).  In support of this contention, the Plaintiff claims that the ALJ neglected to account for his need to take unscheduled breaks, to elevate his legs, and to use the restroom every twenty minutes, as well as the likelihood that he would have "good days and bad days" or be absent from work.  (Doc. 26 at 34).  This challenge does not survive scrutiny.

At step four of the sequential evaluation process, the ALJ must determine the claimant's RFC, as well as his ability to perform his past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  To make these findings, an ALJ must decide based on all the relevant evidence of record what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms.  *Id.* § 404.1545(a)(1).

At step five, the ALJ must then consider the claimant's RFC in combination with his age, education, and work experience to determine whether he can make an adjustment to other work.  *Phillips*, 357 F.3d at 1239 (citing 20 C.F.R. § 404.1520(a)(4)(v)).  If the claimant can make such an adjustment, a finding of no disability is warranted.  *Phillips*, 357 F.3d at 1239.

One of avenues by which an ALJ may determine a claimant's capacity to adjust to other work in the national economy is through the use of a VE.  *Id.* at 1239-40.  "A

17

[VE] is an expert on the kinds of jobs an individual can perform based on [the claimant's] . . . capacity and impairments." *Phillips*, 357 F.3d at 1240. "If the ALJ utilizes the testimony of a VE, the ALJ must pose an accurate hypothetical to the VE that accounts for all of the claimant's impairments and restrictions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citation omitted). When the ALJ properly rejects purported impairments or limitations, however, the ALJ need not include those impairments or limitations in the hypothetical presented to the VE. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

As discussed above, in arriving at his RFC determination here, the ALJ properly discounted the Plaintiff's subjective complaints of chronic fatigue, shortness of breath, dizziness, blurred vision, and diarrhea as inconsistent with the medical documentation of record. (R. 19–20). Likewise, the ALJ assigned little weight to Dr. Amarchand's opinions, which included recommendations regarding the Plaintiff's potential absenteeism (R. 354) and the need for time off from work (R. 368). While it is true that the ALJ did not explicitly address all the Plaintiff's alleged restrictions in his decision, he was not required to do so. *Crawford*, 363 F.3d at 1161. Because the Plaintiff does not demonstrate error with respect to the ALJ's RFC findings, he cannot show that the RFC assessment was improper or that—by extension—the hypothetical he posed to the VE was flawed.

D.

The Plaintiff's remaining challenge is that the ALJ did not adequately develop the record with respect to whether the Plaintiff met Listing 4.02, which defines the impairment of chronic heart failure.[6]   To meet that listing, a claimant must satisfy the criteria set forth in both paragraphs of the listing.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.02.   The first paragraph—known as Paragraph A—requires the "[m]edically documented presence" of either systolic failure or diastolic failure.  *Id.*  Of relevance here, systolic failure is defined, in part, as requiring "left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure)."  *Id.*  The second paragraph— known as Paragraph B—necessitates that the systolic failure result in certain consequences, including, *inter alia*, the inability to perform on an exercise tolerance test under certain conditions or, alternatively, three or more separate episodes of acute congestive heart failure within a consecutive 12–month period that meet various criteria, such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization.  *Id.*

At the hearing, the ALJ questioned the Plaintiff as to whether he had undergone a "stress test."  (R. 43).   After the Plaintiff responded in the affirmative, the ALJ

---

[6] The Listings are found at 20 C.F.R. Part 404, Subpart P, Appendix 1, and catalog those impairments that the SSA considers serious enough to prevent a person from performing any gainful activity.  20 C.F.R. § 404.1520(a)(iii).   When a claimant's affliction(s) match an impairment on the list, the claimant is automatically entitled to disability benefits.  *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir.1984).

speculated that a chemical stress test—as opposed to an exercise tolerance test—was
conducted.  (R. 43–44).  The ALJ observed:

> [q]uite honestly . . . I think we're at the listing level.  I mean we have
> 4.02A(1) and we have - - we need also [subsections] B(1), (2) or (3).  And
> I think [subsection three] is the inability to perform an exercise tolerance
> test at a workload equivalents of five [METs] or less.  But I don't have
> evidence to show that they did one, but I imagine that because they did
> the chemical stress test, they did that because they didn't [think] they
> could do one.

(R. 44–45).

The ALJ further inquired of the Plaintiff's representative as to whether the
Plaintiff had three separate episodes of hospitalization for congestive heart failure, and
the representative stated that the Plaintiff did not.  (R. 45).  The ALJ then concluded
that "[m]aybe we're not quite there at the listing."  *Id.*

In his decision, the ALJ determined that the Plaintiff did not meet either
Paragraphs A or B of Listing 4.02 because:

> there [was] no evidence of systolic failure with left ventricular end
> diastolic dimensions greater than 6.0 cm or ejection fraction of 30% of
> less during a period of stability (not during an episode of acute heart
> failure) resulting in persistent symptoms of heart failure, three or more
> separate episodes of acute congestive heart failures, or an inability to
> perform on an exercise tolerance test at a workload equivalent to five
> METs or less.

(R. 18).

Based on the ALJ's queries about the "stress test" and his remark that the
Plaintiff may have met Listing 4.02, the Plaintiff now argues that the ALJ "had a duty

to either re-contact Dr. Amarchand or have [the Plaintiff's] representative re-contact Dr. Amarchand" to determine whether the Plaintiff could perform an exercise tolerance test as required by Paragraph B of Listing 4.02.   (Doc. 26 at 25).   This argument is without merit.

While it is well-established that "Social Security proceedings are inquisitorial rather than adversarial" and that the ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits," *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (citation omitted), it is equally true that "[a] claimant bears the burden of showing his impairments meet or equal a listing," *Yanes v. Comm'r, Soc. Sec. Admin.*, ___ F. App'x ___, 2021 WL 2982084, at *3 n.6 (11th Cir. July 15, 2021) (per curiam) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)).   Ultimately, "[i]n evaluating the necessity for a remand, [the court is] guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice."   *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (citation and quotations omitted).

In this case, the Plaintiff's contention regrading whether he could perform an exercise tolerance test turns on his assertion that—by his reading of the hearing transcript—the "ALJ acknowledged that [the Plaintiff] met subsection A of Listing 4.02."   (Doc. 26 at 25).   This is not a fair interpretation of what the ALJ said at the hearing.   As noted above, the ALJ retreated from his initial perception that the Plaintiff satisfied Paragraph A (R. 45) and later made clear in his decision that the Plaintiff did not, concluding that there was no evidence of an "ejection fraction of 30% of less during a period of stability (not during an episode of acute heart failure)."   (R. 18).

The Plaintiff does not challenge the ALJ's findings with respect to Paragraph A.  As a result, even if he could meet the Paragraph B criteria, he cannot demonstrate a likelihood of unfair prejudice.  *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (per curiam) (holding that the claimant "ha[d] not shown that she suffered prejudice as a result of any failure of the ALJ to perform further factfinding, because there [wa]s no evidence [the] ALJ's decision would have changed in light of any additional information").[7]

IV.

For the foregoing reasons, it is hereby ORDERED:

1.     The Commissioner's decision is affirmed.

2.     The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of August 2021.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

---

[7] The Commissioner argues that the plain language of SSR 96-5p does not support the Plaintiff's argument that the ALJ should have recontacted Dr. Amarchand because Dr. Amarchand did not render an opinion as to whether the Plaintiff met Listing 4.02.  According to SSR 96-5p, in cases where "treating source evidence" is important but the "evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."  SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996).  The Court need not resolve this argument, however, because the Plaintiff does not rely on SSR 96-5p.